## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

UNITED STATES OF AMERICA                                          PLAINTIFF

v.                              No. 4:12CR00243-02 JLH

DEMETRIUS KELLEY                                                  DEFENDANT

## OPINION AND ORDER

Demetrius Kelley is charged with possession with intent to distribute PCP in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B).  The PCP was discovered and seized during a warrantless search of a vehicle driven by Kelley on the evening of July 27, 2012.  Kelley has filed a motion to suppress, arguing that there was no probable cause for the traffic stop, that he did not consent to the search, and that there were no exigent circumstances justifying the search without his consent.

The Court conducted an evidentiary hearing at which three officers for the Pulaski County Sheriff's Department testified for the government, while Kelley, Kelley's mother, his sister, and one other witness testified for Kelley.

Officer Calvin Davidson testified that at approximately 10:30 p.m., on July 27, 2012, he saw a blue Cadillac on which the right rear brake light was defective.  He initiated a traffic stop on 34th Street just off of Bankhead Drive, which is just outside the home of Kelley's mother.  The passenger was Marcus Blackman, and the driver was Demetrius Kelley.  According to Davidson, Blackman and Kelley appeared to be under the influence of narcotics.  He placed Blackman in his patrol car while he spoke with Kelley.  He asked permission of Kelley to search the vehicle, which was owned by Kelley's mother, and Kelley granted the permission.  At the time of the search, Kelley was standing at the rear of the automobile.  During the search, Davidson found a water bottle that had a strong chemical smell, which he recognized as PCP.  According to Davidson, Kelley's mother came outside,

and he had a deputy hit the brake so that he could show her that the brake light was out.  She says that she acknowledged seeing that the brake light was out and said that she would have it fixed the next day.

Drew Evans, also an officer of the Pulaski County Sheriff's Department, testified that he came to the scene of the traffic stop as back-up to Davidson.  When he arrived, Davidson was inside of the automobile conducting the search.  Kelley was standing to the rear of his vehicle between his vehicle and Davidson's vehicle.  Evans testified that Kelley's mother came out to inquire what was going on, and Davidson explained that he had stopped Kelley because the brake light was out.  Evans then went to the driver's side of the vehicle and push the brake with his hand so that Davidson could show Kelley's mother that the brake light was not working.   According to Evans, Kelley's mother acknowledged that the brake light did not work and stated that she would get it fixed the next day.

Michael Hendrix, another officer from the Pulaski County Sheriff's Department, also testified. Like Evans, he came to the scene after the traffic stop had been made.  He stood with Kelley while Davidson searched the vehicle.  Hendrix testified that he was present when Kelley's mother came outside.  He observed Davidson and Evans show Kelley's mother that the brake light was not functional.

Lavita Griffen, Kelley's sister, testified that her mother called her during the traffic stop, and she went to her mother's house, but the stop had been concluded and the officers had left by the time she arrived.  Griffen testified that her mother showed her that the brake lights were operable.  Griffen testified that she did not have her camera.  She had her cell phone with her, but the pictures were not good because it was night and it was an old phone.  Still, she verified that night that the lights did

work.  On August 17, 2012, Griffen took photographs of the vehicle with a 35mm digital camera, and those photographs show that the brake lights were functioning.

Kelley's mother, Julia Kelley, also testified.  She stated that when the officers stopped Kelley, he called her and said that the officers had stopped him but he did not know why.  She went outside and saw her son still sitting in her car.  She testified that the officers removed her son from her car and put him in the patrol car.  Davidson began the search without asking her or her son for permission.  Davidson found the water bottle, presented it to her, and said, "Smell this."  She did not detect a smell.  Davidson told her that since she had smelled it, she needed to go to the hospital.  She did not go, however, because it did not bother her.  According to her, the officers stated that they stopped the vehicle because they wanted to talk to her son about a stolen truck.  She testified that the officers said nothing to her about the brake light being out.  She denied that the officers showed her that the brake light was not functioning.  She also denied acknowledging that the brake light was defective and stating that she would get it fixed the next day.  She presented into evidence an invoice dated August 20, 2012, from West Auto Repair Shop, in the amount of $30, stating that the right brake light was not defective.  The odometer reading on the invoice shows that the vehicle had 239,233 miles.  She testified that she had never replaced any of the brake lights and did not do so before the photographs were taken on August 17, 2012, or before West Auto Repair Shop inspected the brake light on August 20, 2012.

Next, Wallace Brown testified.  Brown is employed at the West Auto Repair Shop as an auto mechanic.  He testified that on August 20, 2012, he inspected the vehicle and concluded that the brake light was not out.

3

Finally, Kelley, himself, testified.  He testified that Davidson never requested permission to search the car and he never gave consent for the search.

In summary, the evidence produced by the government shows that there was probable cause for a traffic stop, i.e., that the right rear brake light on the vehicle that Kelley was driving was not operating, and Kelley gave consent for the search; in contrast, the evidence presented by Kelley shows that there was no defect in the brake light, and he never gave consent for the search of the vehicle.

The Court has concluded that the evidence presented by the government is more credible.  While it certainly can happen that an officer who initiates a traffic stop and seizes evidence during the search of a vehicle may fabricate a pretext to justify the traffic stop, it seems unlikely that he would do so by claiming that the brake light was not functioning when in fact it was.  If the officer were to say that the brake light was not functioning when in fact it was, that claim could easily be proven false by taking photographs of the brake light on the spot.  Here, the stop was conducted immediately outside of the residence of Kelley's mother, a fact of which Davidson was aware.  If Davidson intended to fabricate a pretext to justify the stop, he could have done so by claiming that Kelley had failed to come to a complete stop at a stop sign, that he had swerved across the center line, that he had been going 40 miles per hour in a 35 miles per hour speeding zone, or the like.  A claim of that sort cannot immediately be proven false by means of a photograph.  However, by saying that the brake light was not functioning, and by making that claim immediately outside of Kelley's mother's residence, Davidson created a circumstance in which Kelley's mother could bring a camera from her house and photograph the brake light to prove that the officers had fabricated a pretext to justify the traffic stop.  Moreover, in this day and age, cell phones are ubiquitous, and nearly all of them have

the capacity to take photographs.  Kelley had a cell phone, as did his sister who came to the scene on the evening in question.  It is not logical to believe that if an officer would fabricate a pretext to justify a traffic stop when the fabrication could be discredited on the spot by use of a camera or a cell phone with the capacity to take photographs.

The testimony by Kelley's mother that Davidson asked her to smell of the water bottle and then told her that she should go to the hospital because she had smelled it also is incredible. Likewise, the testimony by Kelley's mother that she had never had to replace brake lights on a vehicle that had been driven nearly 240,000 miles is not credible.  The fact that the evidence used to show that the brake lights were functional – the photographs and the inspection at West Auto Repair Shop – was not generated until three weeks after the incident is also suspicious.  Obviously, that delay gave ample opportunity for repairing the brake light; and it does not stand to reason that Kelley and his family would wait three weeks to take photographs and have an inspection to prove that the brake light was operable unless the brake light needed repair.

For these reasons, the Court finds that the brake light was not functioning, as the officers from the Pulaski County Sheriff's Department testified.  And, because the credibility issues have been resolved in favor of the witnesses for the government, the Court also concludes that Kelley gave permission for the search.

"An officer may stop a vehicle when he has probable cause to believe that a traffic violation, however minor, has occurred."  *United States v. Searcy*, 181 F.3d 975, 978 (8th Cir. 1999).  When an officer becomes aware that a brake light is not functioning, he has probable cause for the traffic stop.  *Id.* at 979.  Thus, there was probable cause for the traffic stop.  Kelley consented to the search.

As the driver of the vehicle, he had the authority to consent to the search.  *United States v. Eldridge*, 984 F.2d 943, 948 (8th Cir. 1993).  Therefore, the motion to suppress is denied.  Document #29.

IT IS SO ORDERED this 21st day of May, 2013.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE